# DISTRICT COURT OF APPEAL OF FLORIDA
## SECOND DISTRICT

_____

DEREK J. MULLARKEY,

Appellant,

v.

MELISSA A. TIRACO,

Appellee.

No. 2D2024-1612

_____

July 25, 2025

Appeal from the Circuit Court for Pasco County; Brian Gnage, Judge.

Elizabeth S. Wheeler of Berg & Wheeler, P.A., Valrico, for Appellant.

No appearance for Appellee.


BLACK, Judge.

Derek Mullarkey, the father, appeals from the Amended Final Judgment of Paternity, which modified the parties' timesharing plan and child support. We affirm without comment the judgment to the extent it modified the timesharing plan. But for the reasons expressed below, we reverse the judgment to the extent it awarded child support.

Melissa Tiraco, the mother, filed her supplemental petition for modification of timesharing and child support on July 28, 2022; the

father filed a counterpetition for modification of timesharing and child support on January 20, 2023.  A hearing was held on January 31 and February 1, 2024.  The Amended Final Judgment of Paternity modifying timesharing and child support was entered on March 18, 2024.  With respect to child support, the amended judgment indicates that the previously entered Final Judgment of Paternity directed that the parties shall alternate claiming the child as a dependent for income tax purposes, with the mother claiming the child on even tax years and the father claiming the child on odd tax years.  The amended judgment provides that effective March 2023, the cost of the child's healthcare increased from $20 per month to $260 per month.  The amended judgment sets forth the parties' gross incomes, finding that the parties had stipulated to using the mother's income as reflected on her 2022 tax return for determining child support for all relevant time periods and not just for the father's child support obligations in 2022.  The amended judgment then purports to adopt the child support guidelines worksheets "attached" to it despite that no child support guidelines worksheets were in fact attached.  And then in reliance on an "attached spreadsheet with correlating Child Support Guidelines Worksheets," the amended judgment indicates that the father "owes child support arrears of $3,415.22 from August 2022 through and including February 2024." Like the child support guidelines worksheets, the court also failed to attach the spreadsheet to the amended judgment.  Moreover, the amended judgment does not set forth the father's monthly child support obligation for any relevant time period dating back to August 2022, shortly after the mother's petition was filed.

"Although we review a trial court's award of child support for an abuse of discretion, a trial court's decisions about support must be

2

supported by competent substantial evidence and factual findings sufficient to enable this court to determine how the trial court made the decisions it did." *Lennon v. Lennon*, 264 So. 3d 1084, 1085 (Fla. 2d DCA 2007) (citing *Augoshe v. Lehman*, 962 So. 2d 398, 401 (Fla. 2d DCA 2007)).

Neither the child support guidelines worksheets nor any other child support document purportedly relied upon by the court was attached to the amended judgment. In his amended motion for rehearing, the father alerted the trial court to this error. *See Tinoco v. Lugo*, 342 So. 3d 845, 851 (Fla. 2d DCA 2022) (explaining that a court reversibly errs by failing to attach a child support guidelines worksheet to the judgment (citing *J.A.D. v. K.M.A.*, 264 So. 3d 1080, 1083 (Fla. 2d DCA 2019))); *see also McGill v. McGill*, 355 So. 3d 563, 565 (Fla. 2d DCA 2023); *Sadlak v. Trujillo*, 336 So. 3d 1275, 1279 (Fla. 3d DCA 2022). The trial court attempted to remedy this error in its order disposing of the father's amended motion for rehearing entered on May 13, 2025. In that order, it directed the parties to rely on "the child support guidelines filed on 6/11/24"—three months after entry of the amended judgment. But merely incorporating the documents into the amended judgment by referencing them in the rehearing order is insufficient. *Cf. Picard v. Picard*, 353 So. 3d 685, 686 (Fla. 2d DCA 2022) ("[A]lthough the final judgment adopts the mother's parenting plan, it incorporates that plan only by reference to its trial exhibit number and also includes several modifications to that plan's provisions. Thus, as it stands, there is no single document the parties can look to that comprises the entire approved plan. Accordingly, we reverse and remand for the trial court to award the parties shared decision-making authority as to extracurriculars and to approve and attach to the final judgment a copy

3

of a parenting plan consistent with this opinion.").  This is particularly so because the amended judgment does not set forth the father's monthly child support obligations for any of the relevant time periods and the child support guidelines worksheets and supporting documents filed on June 11, 2024, are incomplete and lack clarity.

Seven documents related to child support were filed on June 11, 2024.  These documents, which were prepared by the mother's counsel, are collectively referred to by handwritten notation as Court Exhibit B. The first document, titled Monthly Support with Alternating Exemptions, sets forth three different monthly child support obligations for the "current year": monthly child support if the mother claims the child as a dependent for income tax purposes, monthly child support if the father claims the child as a dependent for income tax purposes, and monthly child support equating to the average of the first two support amounts listed on the document.  No further explanation for the monthly child support amounts is provided, including with regard to the applicability of the average child support amount.  The next five documents of exhibit B consist of child support guidelines worksheets for various "scenarios": one is identified as "Ongoing Alternating Tax Exemption," which further indicates that it is for "alt/year 1"; one is identified as "2024 Mother Claiming Child"; two are identified as "2023" and set forth two different support obligations; and one is identified as "2022."  The mother's gross monthly income on each of the five worksheets is listed as $2,979, which is the gross monthly income reflected on her 2022 income tax return. The seventh and final document of exhibit B includes "arrears" calculations for the following time periods: August 2022 through December 2022, January 2023 through February 2023, March 2023 through December 2023, and January 2024 through February 2024.

4

It is unclear when (or if) the father is obligated to pay the average child support amount set forth on the first document of exhibit B. It is also apparent that one child support guidelines worksheet is missing—the worksheet for ongoing child support for the years when the father claims the child as a dependent. Moreover, the child support guidelines worksheets do not clearly identify which time period and tax exemption scenario they apply to—this seems particularly problematic for the years when more than one child support calculation is required. These shortcomings not only make it difficult for the father to determine his child support obligations for any given time but also hinder our review of the amended judgment. *Cf. Tinoco*, 342 So. 3d at 851-52 (reversing in part and remanding for the court to explain how it determined the amount of the mother's monthly child support obligation and to attach the child support guidelines worksheet to the judgment); *Sadlak*, 336 So. 3d at 1279 (reversing in part and remanding for reconsideration of the child support award due in part to the trial court's failure to attach the child support guidelines worksheet to the judgment and holding that reliance on the worksheet in the record filed after entry of the judgment was insufficient); *Garcia v. Espinosa*, 314 So. 3d 619, 625 (Fla. 3d DCA 2021) (reversing and remanding for reconsideration of child support where the court awarded child support in varying amounts for different time periods but failed to explain how the child support was calculated and also failed to include child support guideline worksheets, thereby inhibiting the appellate court from conducting a meaningful review).

We also agree with the father that the trial court erred in finding that the parties had stipulated to using the mother's income as reflected on her 2022 tax return to calculate his child support obligations for 2023, 2024, and beyond. The mother testified regarding her monthly

5

incomes dating back to 2022, and the court admitted into evidence several of the mother's financial affidavits which supported her testimony. However, at the time of the hearing, the mother's 2022 tax return had been completed, and the father's counsel felt that it more accurately reflected her income for that year since the mother frequently received bonuses which might not otherwise be reflected on her pay stubs and in turn on her financial affidavits. As such, the trial court admitted the 2022 tax return without objection and reiterated that her gross monthly income for 2022 based on the tax return was $2,979. The hearing transcript does not reflect that the parties stipulated to using the mother's income as reflected on her 2022 tax return to calculate child support for any year other than 2022. Therefore, the trial court erred to the extent it found otherwise. *See Postregna v. Tanner*, 903 So. 2d 219, 221 (Fla. 2d DCA 2005) (reversing award of prejudgment interest which was purportedly based on the parties' stipulation where no such stipulation existed); *cf. Jaeger v. Jaeger*, 195 So. 3d 414, 415 (Fla. 4th DCA 2016) ("[I]t appears that the parties stipulated to a $26,000 marital asset portion of the retirement account that the trial court nonetheless valued as $61,312. Thus, the final judgment should have reflected the value agreed upon by the parties.").[1]

_____

[1] To the extent the father argues that the trial court erred by failing to make findings in the amended judgment as to the parties' net incomes, *see Tinoco*, 342 So. 3d at 850 (citing *J.A.D.*, 264 So. 3d at 1083), this argument was not preserved, *see* Fla. Fam. L. R. P. 12.530(a). We nonetheless note that while the trial court made findings only as to the parties' gross incomes in the amended judgment, it is apparent from the child support guidelines worksheets in the record that child support was calculated based on the parties' net incomes as required by section 61.30, Florida Statutes (2023).

Finally, the father correctly contends that the trial court erred by referring to his retroactive child support obligation as an arrearage. *See Penalver v. Columbo*, 810 So. 2d 563, 566 n.1 (Fla. 2d DCA 2002) ("The final judgment mischaracterized the retroactive support as an 'arrearage.' An arrearage occurs when a court orders support, but a party does not pay it."). The court's multiple references in the amended judgment to "arrears" and "arrearage" appear to be mere scrivener's errors. Nonetheless, these errors shall be corrected on remand; similarly, any supporting documents attached to the judgment on remand shall reflect that the father's child support obligations for August 2022 through February 2024 constitute retroactive child support.[2]

Based on the foregoing, the amended judgment is reversed to the extent it awarded child support. On remand, the trial court shall recalculate the father's monthly child support obligations in accordance with this opinion and clearly state the father's monthly child support obligations for each relevant time period and dependency tax exemption scenario. The monthly child support obligations shall be supported by child support guidelines worksheets, which must be attached to the judgment on remand and clearly labeled with the applicable time period and dependency tax exemption scenario. The trial court must also recalculate the total amount of the father's retroactive child support obligation. The judgment is otherwise affirmed.

Affirmed in part, reversed in part, and remanded.

NORTHCUTT and SLEET, JJ., Concur.

_____

[2] Though the father raises additional issues on appeal regarding child support, those issues lack merit, and therefore we decline to address them.

Opinion subject to revision prior to official publication.