EDWARDS, J.
Christopher Dorworth (“Former - Husband”) appeals the final judgment of dissolution of marriage awarding lump sum and durational alimony to Elizabeth Shale Dor-worth (“Former Wife”),, determining and distributing marital assets, and allocating marital debt. Former Husband asserts that the trial court committed multiple errors. We find three errors that merit discussion and require reversal.
The parties married on August 26, 2000, and separated in July 2009. Former Husband filed his petition for dissolution on September 8, 2010. Shortly afterwards, Former Wife filed a counter-petition with her answer. Two children were born during the marriage, who were twelve and ten years old at the time of trial.
*338 Former Husband was thirty-seven years old at the time of trial. From 2000 until 2004, Former Husband was employed in the medical device field and earned between $99,000 and $135,000 per year. From 2004 until 2007 he was involved in several real estate ventures, and testified to earning approximately $500,000 per year. In 2007, he was elected to the Florida Legislature where he served for five years, before becoming a governmental affairs advisor. While a legislator, his salary was approximately $29,000 annually. He was not in the legislature long enough for his State of Florida pension to vest. In 2012, upon leaving the legislature, Former Husband became a governmental consultant and earned a monthly income of approximately $16,100, which increased to $36,000 per month by the time of trial.
Former Wife was thirty-five years old at the time of trial. During the marriage, she earned her law degree and became a member of The Florida Bar. Former Wife was unemployed between 2009 and April 2011. Since April 2011 through the time of trial, she was employed as the director of placement at Florida A & M University College of Law, and earned a salary of $52,000 per year, or $4,583 monthly.
Former Husband correctly asserts that'the trial court erred in its valuation of a certain marital debt that the parties referred to as the TG & O debt, which concerns a $2,665 million judgment that resulted from a defunct land deal. The parties agreed that the TG & O debt was a marital obligation. Former Husband entered into a written judgment forbearance and settlement agreement (“the agreement”) with TG & O that required him to make monthly payments of $5,000 for 100 consecutive months, for a total of $500,000. Former Wife did not sign the agreement and is not obligated by the agreement to make any payments. The agreement, which was received into evidence without objection, states that if Former Husband timely pays the first $250,000 of the $500,000, TG & O will file a satisfaction of the judgment in the public record. However, the agreement provides that filing the satisfaction of judgment does not release Former Husband’s remaining obligations. According to the agreement, upon full payment of $500,000, all of TG & O’s claims would be deemed satisfied. The agreement provides that Former Husband would remain obligated for the entire balance of the judgment, $2,665 million plus interest, unless the payments are timely made each month and until the $500,000 is ultimately paid in full.
In its final judgment, the trial court concluded that Former Husband had essentially negotiated the $2,665 million down to a “total true balance” of $250,000. The trial court did not explain how it arrived at $250,000, rather than $500,000. The valuation of an asset or debt in connection with equitable distribution is generally reviewed for an abuse of discretion. Chehab v. Hamilton-Chehab, 45 So.3d 533, 535 (Fla. 5th DCA 2010). However, “valuation not supported by competent substantial evidence cannot stand.” Noone v. Noone, 727 So.2d 972, 974 (Fla. 5th DCA 1998). The agreement established the amount of debt Former Husband owed to TG & O. “Settlement agreements are governed by the rules of contract interpreta tion.” ABC Liquors, Inc. v. Centimark Corp., 967 So.2d 1053, 1056 (Fla. 5th DCA 2007). The trial court’s interpretation of a contract in a dissolution proceeding is a matter of law subject to de novo review. Chipman v. Chipman, 975 So.2d 603, 607 (Fla. 4th DCA 2008).
The written agreement is clear that $500,000 is the lowest amount Former Husband can pay to satisfy the TG & O debt. Former Husband’s testimony was *339 consistent with what the written agreement stated. There was no contrary evidence, and Former Wife now agrees, on appeal, that the lowest value for the TG & 0 debt was $500,000. The trial court abused its discretion when it utilized the incorrect figure for the TG & 0 debt in making an equitable distribution of the couple’s assets and liabilities, which included a $125,000 award of lump sum alimony to Former Wife. Accordingly, the case is remanded for the trial court to reconsider and recalculate the distribution plan using the correct figure of $500,000 for the TG & O debt. See Banton v. Parker-Banton, 756 So.2d 155, 156 (Fla. 4th DCA 2000) (‘When reversible error occurs with regard to valuation or distribution, the entire distribution scheme must be reversed and remanded to allow the trial court to ensure both parties receive equity and justice.”).
Furthermore, Former Husband asserts that the trial court erred in awarding Former wife durational alimony in the amount of $5,000 per month, for thirty-six months, in addition to the $125,000 lump sum alimony award. Specifically, Former Husband asserts that the monthly dura-tional alimony award, combined with Former wife’s monthly salary, exceeds her monthly needs. An alimony award should not exceed a spouse’s need. See Lin v. Lin, 37 So.3d 941, 942 (Fla. 2d DCA 2010). An order awarding alimony in excess of the recipient spouse’s needs will be reversed as an abuse of discretion, absent special circumstances. Rosecan v. Springer, 845 So.2d 927, 929 (Fla. 4th DCA 2003); McCray v. McCray, 493 So.2d 1117, 1117 (Fla. 1st DCA 1986). Former Wife’s net monthly income from salary and alimony was calculated at $7,307.05. The trial court listed specific items of expense in the final judgment when it determined Former Wife’s monthly needs to be “at least” $5,758.30 in order to maintain her then-current standard of living. However, it was not clear whether or why certain expenses, such as Former Wife’s .monthly student loan payment of $550, were included or excluded in performing these calculations. The trial court found that Former Wife had been required to reduce her standard of living following separation, while Former Husband was not required to do the same. Former Husband asserts that the trial court also erred in calculating his ability to pay the durational alimony, given his other obligations. Considering the lack of clarity as to how the trial court calculated Former Wife’s expenses and income, as well as the error in calculating the TG & O debt, we remand for the trial court to determine the amount of durational alimony to be paid based upon the Former Wife’s needs and Former Husband’s ability to pay.
Former Husband also argues that the trial court erred in awarding Former Wife $125,000 as lump sum alimony, which the trial court explained was coordinated with Former Wife’s share of the TG & O debt payments. Former Wife agrees that the lump sum alimony was specifically tied to the TG & O debt, which she further agrees was twice the amount considered by the trial court. On remand, the trial court must determine whether using the correct figure of $500,000 for the TG & O debt will impact the award or amount of lump sum alimony to Former Wife. The trial court must also reconsider the entire distribution plan because each division and distribution of a marital asset or liability is interrelated in order to achieve a fair result to both parties. See Tilchin v. Tilchin, 51 So.3d 596, 597-98 (Fla. 2d DCA 2011). Similarly, the trial court should reconsider alimony awards and other orders in the final judgment that were based on the incorrect debt amount to the extent that alimony or other awards may be used *340 to balance inequities resulting from asset or liability division. See Hamlet v. Hamlet, 583 So.2d 654 (Fla.1991).
We find no abuse of discretion with respect to the other matters raised'by Former Husband, see Canakaris v. Canakaris, 382 So.2d 1197, 1203 (Fla.1980), and affirm the final judgment in all other respects.
AFFIRMED in part; REVERSED in part; and REMANDED with instructions.
ORFINGER and COHEN, JJ.,' concur.