DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**GARY L. SMITH,**
Appellant,

v.

**VERNIA SMITH,**
Appellee.

No. 4D16-2969

[August 30, 2017]

Appeal from the Circuit Court for the Fifteenth Judicial Circuit, Palm Beach County; David E. French, Judge; L.T. Case No. 502013DR008333.

Lane Weinbaum of Weinbaum P.A., Plantation, for appellant.

Vernia Smith, Boca Raton, pro se.

FORST, J.

Appellant Gary Smith ("Former Husband") raises four issues on appeal of the trial court's final judgment of dissolution of the parties' marriage. We find merit with respect to Former Husband's contention that the trial court erred in awarding appellee Vernia Smith ("Former Wife") $7,501 in attorney's fees, in valuing the marital pension to be worth $102,000 at the time of filing the complaint, and equitably distributing $50,000 from the marital pension to Former Wife. Accordingly, we reverse the dissolution order in part and remand these issues to the trial court, as set forth below. We affirm without further discussion the other issue raised on appeal.

**Background**

On September 13, 2013, Former Wife filed her amended petition for dissolution of marriage. She and Former Husband had been married for thirteen years. The parties had no children. In her petition, Former Wife requested alimony, equitable distribution, and attorney's fees. She also alleged that Former Husband dissipated a certain marital asset, his retirement pension, throughout the marriage. Former Husband answered, in turn requesting the same relief: alimony, equitable distribution, and attorney's fees. He denied dissipating the pension.

At the bench trial, the parties first discussed the possible equitable distribution of Former Husband's retirement pension. Former Wife, appearing pro se, alleged that Former Husband dissipated the pension he received from his former employer, which was worth approximately $102,000 by the time Former Husband's employment was terminated in 2012. Former Wife admitted exhibit thirteen, which she explained showed Former Husband withdrawing money from his bank accounts months before the dissolution petition. On some days, she noted, Former Husband withdrew thousands of dollars. Later at trial, Former Husband explained he made these withdrawals to pay various litigation costs associated with the marriage dissolution, as well as living expenses.[1] Moreover, he referenced an agreement between himself and Former Wife, in which Former Wife agreed to allow Former Husband to withdraw half of the pension, which was apparently $52,397.07.[2] Former Wife countered, explaining that on one occasion, she overheard a phone call in which Former Husband and his sister talked about opening a joint bank account, presumably so that Former Husband could "hide" the pension funds.

The parties then discussed exhibit five, which Former Wife argued showed the existence and value of the pension at the time she filed for dissolution. Former Husband's counsel admitted that there was a pension and that it was a marital asset. However, Former Husband disputed the pension's value, explaining that at the time of the dissolution petition, the pension was worth significantly less than $102,000. Former Wife disagreed—even though she had earlier said that Former Husband dissipated the pension before the filing of the complaint. She told the trial court, "I have given you evidence [of] what the value [of the pension] was on the date of filing. It was $102,000." Former Husband's counsel then stated, "Your Honor, I have not seen $102,000 anywhere." At that point, Former Wife directed the trial court to "the documents before you, your Honor. It should have his separation date and it has that. . . . There it is." Former Wife was referring to exhibit five, which appeared to be a summary of Former Husband's pension sent to him by his former employer's human resources department. The document estimated the

---

[1] Former Husband's counsel summarized: "The testimony by the Respondent [Former Husband] was that it wasn't dissipation, it was depletion. There was $40,000 in attorney's fees. This is a long divorce case. Aside from the attorney's fees, there are living expenses that the Respondent has to pay for."

[2] Former Husband explained in an answer to an interrogatory: "The $57,000 distribution I took from my 401K Fidelity account in 2013 was approved by my Wife. She signed a Waiver authorizing me to take my half of my pension amount. The signed Waiver is on file with [my employer]."

2

value of Former Husband's pension to be approximately $102,000 beginning May 1, 2012.

The parties also discussed attorney's fees at trial. Former Wife was represented by an attorney for part of the marriage dissolution proceedings. The attorney had previously filed a motion for entry of a charging lien in the amount of $7,344.71, and explained in her motion that she would submit an affidavit detailing her attorney's fees and costs. However, she never did. Still, Former Wife submitted a billing statement, which showed that her attorney charged $350 an hour, and which described the kinds of services rendered to account for 1.70 hours, or for $595 charged. The statement did not provide any information for why the attorney charged $6,749.71 as a "Past Due Balance." Former Wife, who is an attorney, then testified as to the reasonableness of the fees.

After trial, the court entered its final judgment of dissolution of marriage. The court found that "[t]he Husband's pension is valued at $102,000 as of the date of filing." Then, in a separate section, the court ordered Former Husband to pay Former Wife $2,000 a month for a period of twenty-five months. The court did not specifically state that the pension was the source of these payments, or that the pension was even a marital asset. Instead, the court stated that it was distributing a "retirement account." Still, earlier at trial, the court explained that Former Husband owed Former Wife "$50,000 for her half of the pension." In its final judgment, the court also ordered Former Husband to pay Former Wife's former counsel $7,501 in attorney's fees, in monthly increments of $300.

Former Husband filed a motion for rehearing, alleging substantially the same arguments he now makes on appeal. The trial court summarily denied the motion.

## Analysis

1. *Attorney's fees*

"The standard of review of an award of attorneys' fees is abuse of discretion." *Diwakar v. Montecito Palm Beach Condo. Ass'n.*, 143 So. 3d 958, 960 (Fla. 4th DCA 2014). The award must be supported by competent, substantial evidence. *Id.*

Former Husband first argues on appeal that the trial court erred for three reasons in awarding $7,501 in attorney's fees to Former Wife's former counsel. We find merit in all of his arguments.

First, the trial court failed to address Former Husband's ability to pay the fees award. Section 61.16(1), Florida Statutes (2016), requires the trial court to "consider[] the financial resources of both parties" when ordering attorney's fees. This means that "[w]hen determining entitlement to attorney's fees and costs in a dissolution of marriage proceeding, in order 'to ensure that both parties have similar access to competent legal counsel, the trial court must look to each spouse's need for suit money versus each spouse's respective ability to pay.'" *Patterson & Maloney v. Gumberg*, 828 So. 2d 403, 405 (Fla. 4th DCA 2002) (quoting *Rosen v. Rosen*, 696 So. 2d 697, 699 (Fla. 1997)).

Here, the trial court noted in its final judgment that Former Husband's net monthly income was $7,419.09, and that his gross monthly expenses were $6,168.56. Elsewhere, the trial court also ordered Former Husband to pay a monthly $2,000 equalizing payment to Former Wife. It is unclear how Former Husband, who only has $1,250.53 remaining each month as surplus after subtracting his gross monthly expenses from his net monthly income, could pay the attorney's fees award on top of the equalizing payment. Like in *Beckstrom v. Beckstrom*, 183 So. 3d 1067 (Fla. 4th DCA 2015), "the trial court found the former wife was in need of attorney's fees, but did not make a finding as to the former husband's ability to pay. We therefore reverse the judgment on this issue and remand the case to the trial court to make the requisite written findings." *Id.* at 1069; *see also DeLillo v. DeLillo*, 848 So. 2d 454, 454 (Fla. 4th DCA 2003) (similar).

Second, there was also no evidence to support part of the fees award. We begin by noting that Former Husband never argued below that there was insufficient evidence to support the award. However, he did so on appeal, and could raise this issue at this stage of the case pursuant to Florida Rule of Civil Procedure 1.530(e). *See also Diwakar*, 143 So. 3d at 961 (citing Rule 1.530(e) to explain that an "argument that there was simply no competent, substantial evidence to support the [attorney's fees] award may be raised for the first time on appeal").

At trial, there was competent, substantial evidence supporting $595 of the $7,501 in attorney's fees Former Wife sought: the billing statement detailing 1.70 fee hours at a $350/hour rate.[3] However, the statement did not provide *any information* regarding why Former Wife's counsel charged

---

[3] *See Brewer v. Solovsky*, 945 So. 2d 610, 611 (Fla. 4th DCA 2006) ("Competent evidence includes invoices, records and other information detailing the services provided.").

an additional $6,749.71 in fees.[4] Without any evidence for this portion of the fees, we remand for an additional hearing to allow Former Wife the opportunity to present evidence for it. *See Diwakar*, 143 So. 3d at 961 ("[W]hen the record contains some competent substantial evidence supporting the fee or cost order, yet fails to include some [other] essential evidentiary support . . . the appellate court will reverse and remand the order for additional findings or an additional hearing, if necessary." (quoting *Rodriguez v. Campbell*, 720 So. 2d 266, 268 (Fla. 4th DCA 1998))).

Third, although we find the trial court erred in awarding the fees because it failed to calculate them by using the lodestar method,[5] Former Husband did not preserve the issue on appeal. However, because we are remanding for a new hearing on fees, we take the opportunity to advise the trial court to include a lodestar calculation in its new order should it again decide to award fees. As we have explained, "[i]t is well-settled that an award of attorney's fees must . . . contain express findings regarding the number of hours reasonably expended and a reasonable hourly rate for the type of litigation involved." *Simhoni v. Chambliss*, 843 So. 2d 1036, 1037 (Fla. 4th DCA 2003).

### 2. *Valuation of the marital pension*

"The valuation of an asset or debt in connection with equitable distribution is generally reviewed for an abuse of discretion." *Dorworth v. Dorworth*, 176 So. 3d 336, 338 (Fla. 5th DCA 2015). The valuation must be supported by competent, substantial evidence. *Id.*

Former Husband argues that there was no evidence to support the trial court's valuation of the marital pension as being $102,000 at the time of filing. Although we recognize the trial court's discretion on this matter, we agree that it erred in valuing the pension. A final judgment of any distribution of marital assets or liabilities "shall be supported by factual findings in the judgment or order based on competent substantial evidence . . . ." § 61.075(3), Fla. Stat. (2016). "Specific factual findings underlying

---

[4] *See Faircloth v. Bliss*, 917 So. 2d 1005, 1006 (Fla. 4th DCA 2006) ("Generally, a fee award must be supported by competent evidence which must include evidence detailing the services performed and the reasonableness of the fee.").

[5] Under the lodestar method, a trial court is required "to determine a 'lodestar figure' by multiplying the number of hours reasonably expended on the litigation by a reasonable hourly rate for the services of the prevailing party's attorney." *22nd Century Props., LLC v. FPH Props., LLC*, 160 So. 3d 135, 142 (Fla. 4th DCA 2015) (quoting *Ottaviano v. Nautilus Ins. Co.*, 717 F. Supp. 2d 1259, 1264 (M.D. Fla. 2010)).

the court's determinations are not required to be expressly stated where the record contains competent evidence to support the trial court's findings." *Jordan v. Jordan*, 127 So. 3d 794, 796 (Fla. 4th DCA 2013).

Here, the trial court stated in its final judgment that "[t]he husband's pension is valued at $102,000 *as of the date of filing.*" As such, the court clearly indicated that it was valuing the pension at the date of filing, which was either August 5, 2013, the date of filing the original complaint, or September 13, 2013, the date of filing the amended complaint. However, there was no evidence that the pension was worth $102,000 at either time. In fact, the evidence showed the opposite: that the pension was worth significantly less.[6] For one, both parties testified that the pension account had less than $102,000 by the time of filing. Former Wife argued that months before the dissolution petition, Former Husband purposefully depleted the pension, stating, "[i]n anticipation of me filing the petition, he dissipated all of the pension." *Id.* Former Wife also relied on exhibit thirteen, which showed Former Husband withdrawing thousands of dollars from his bank accounts, which presumably contained money from the pension, months before the petition. The exhibit showed that in August of 2013, near the date of filing, the bank account's balance was $5,502.81. Reading from the same page of the exhibit, the court told Former Wife, "Ma'am, as of the date of filing you said it was worth approximately $5,500, the 401(k), okay." Former Wife agreed.

Perhaps the trial court sought to value the pension based on its value more than a year before the filing date, for which there was evidence to support the $102,000 valuation. Pursuant to section 61.075(7), Florida Statutes, the court certainly could have done this. However, we cannot presume the trial court sought to do so in light of the trial court explicitly writing in its final judgment that it valued the pension *"as of the date of filing"* the petition. Moreover, the trial court gave no indication for why picking an alternative date would have been "just and equitable under the circumstances." *Id.* On remand, the trial court must rectify the inconsistency in findings related to the value of the pension.

---

[6] Though Former Wife argued below that the pension was worth $102,000 at the time of filing the complaint, the evidence relied on for that proposition—the pension document—only estimated the value of the pension more than one year before filing. We also note that the introduction of all the other evidence, including Former Husband's bank accounts, as well as a prior contract in which Former Wife allowed Former Husband to withdraw half of the pension before the instant lawsuit for purposes irrelevant on appeal, demonstrate that the pension was worth considerably less than $102,000 at the time of filing.

## 3. *Equitable distribution of the marital pension*

"Decisions of the trial court concerning the equitable distribution of marital assets are reviewed under an abuse of discretion standard." *Pomeranz v. Pomeranz*, 901 So. 2d 895, 896 (Fla. 4th DCA 2005).

Former Husband's last argument on appeal is that the trial court committed several errors in awarding $50,000 to Former Wife as part of the equitable distribution scheme. For almost all of the reasons argued by Former Husband, except one which was not preserved, we agree.[7] First and foremost, because we are reversing since there was no evidence supporting the valuation of the marital pension, we must reverse the pension's distribution. The trial court could not distribute $50,000 from the pension unless it expressly chose to value the pension based on an earlier date at which the pension was worth at least that amount, or unless it expressly found that Former Husband dissipated the asset. We have already dealt with the first scenario in our previous section, finding that the court did not use a pre-petition date. Now, we deal with the second.

> "[I]t is error to include in the equitable distribution scheme assets or sums that have been diminished or depleted during the dissolution proceedings unless the depletion was the result of misconduct." To include a dissipated asset in the equitable distribution scheme, there must be evidence of the spending spouse's intentional dissipation or destruction of the asset, and the trial court must make a specific finding that the dissipation resulted from intentional misconduct.

*Weymouth v. Weymouth*, 87 So. 3d 30, 36 (Fla. 4th DCA 2012) (citation omitted) (quoting *Tillman v. Altunay*, 44 So. 3d 1201, 1203 (Fla. 4th DCA 2010)). Here, the evidence was clear that the pension was worth considerably less than $102,000 by the time of filing. Thus, in order to award $50,000 to Former Wife, the court first needed to make a specific finding of dissipation. Since the court made no such finding in its final judgment, it erred in distributing the equalizing payment as it did.

The trial court also failed to consider Former Husband's actual ability to pay the equalizing payment. *See Fortune v. Fortune*, 61 So. 3d 441, 446 (Fla. 2d DCA 2011). In fact, as discussed above, it appears Former Husband cannot pay the monthly $2,000 amount given that he only has

---

[7] Former Husband never argued below or in his motion for rehearing that the trial court failed to take into account any of the factors listed in section 61.075(1), Florida Statutes, when equitably distributing the pension.

a surplus of $1,250.53 remaining each month after subtracting his gross monthly expenses from his net monthly income. As the final judgment also required Former Husband to pay $300 a month in attorney's fees, his ability to pay the $2,000 monthly is all the more doubtful. *See Abramovic v. Abramovic,* 188 So. 3d 61, 64 (Fla. 4th DCA 2016).

As a final matter, we note the trial court failed to specifically identify in its final judgment that the pension was the marital asset serving as the source of the equalizing payments. *See* § 61.075(3), Fla. Stat. The court only wrote that a "retirement account" was the source. A review of the record makes it likely that the court was referring to the pension, but we would rather not presume that fact on appeal.

## Conclusion

We reverse and remand the final judgment of dissolution of marriage. First, we reverse the award of attorney's fees because the trial court failed to find that Former Husband had an actual ability to pay the fees, and because there was no competent, substantial evidence for part of their amount. We remand for a new hearing to address these issues.

Second, we reverse because the trial court incorrectly valued the pension at the time of filing, and, by way of such mistake, distributed incorrect equalizing payments. In order for the trial court to distribute $50,000, it should have explicitly made a finding that it was doing so based on the pension's value at an earlier date, or based on a finding of dissipation. Since the trial court did neither, we reverse. In addressing this issue on remand, the trial court must make a determination with respect to whether Former Husband had the actual ability to pay the equalizing payment.

Accordingly, we reverse and remand for further proceedings consistent with this opinion.

*Affirmed in Part, Reversed and Remanded in Part.*

GERBER, C.J., and WARNER, J., concur.

\*         \*         \*

***Not final until disposition of timely filed motion for rehearing.***

8